[No. 32443. Department Two. December 16, 1953.]

R. W. DUNCAN et al., Appellants, v. PATRICK J. JUDGE et al., Respondents.[1]

'Reported in 264 P. (2d) 865.

*Meier & Murray,* for appellants.

*Karr, Tuttle & Campbell* and *Carl G. Koch,* for respondents.

DONWORTH, J.—This is an action by one tort-feasor and his insurer against another tort-feasor for indemnity. Plaintiffs sought to recover amounts paid by them in settlement of judgments recovered against both tort-feasors by third parties for personal injuries resulting from an automobile collision. The trial court entered judgment dismissing the action, and plaintiffs have appealed.

The court records in the original litigation (herein called the tort cases) were admitted as exhibits in this case and constitute the sole evidence as to the legal relationship between the tort-feasors.

The tort cases arose out of a collision between a taxicab owned by appellant Duncan (whose public liability was insured by appellant Preferred Casualty Association) and an automobile owned by respondent Robert Judge and driven by respondent Patrick J. Judge. Just prior to the accident, the taxicab was proceeding in a westerly direction on an arterial street in Seattle and the automobile was approaching it from the south on an intersecting street. The latter failed to stop before entering the intersection as required by law and collided with the taxicab, whose passengers sustained serious injuries.

The tort cases resulting from this collision consisted of three suits:

(a) An action brought by three taxicab passengers for personal injuries (each asserting a separate cause of action) against Duncan (taxicab owner), Kusah (taxicab driver), and Patrick J. Judge (automobile driver). (This action is hereinafter referred to as the first tort case.)

(b) An action by Duncan against both Patrick J. Judge

and Robert Judge for damage to the taxicab and loss of use thereof.

(c) An action by Kusah (taxicab driver) against both Judges for personal injuries. (This action was settled prior to trial for $1,850, which was paid by Fidelity and Casualty Company, which had issued a public liability policy covering the Judge car.)

The first two suits were consolidated for trial and resulted in two verdicts rendered by the same jury as follows:

(a) Total awards to the three passengers against Duncan, Kusah, and Patrick J. Judge in the amount of $31,150; (b) award in favor of Duncan against Patrick J. Judge and Robert Judge in the sum of $650.

In each case, a judgment was subsequently entered upon the verdict for the sums stated above, plus taxable costs.

During the thirty-day period following the entry of the two judgments (when an appeal might have been taken therefrom), counsel for the Judges and their insurer was actively engaged in negotiating with the judgment creditors' counsel for the purpose of obtaining a reduction of amounts payable to them under the judgment entered in the first tort action. He also conferred with counsel for Duncan and his insurer with regard to the progress of these negotiations. The judgment creditors meanwhile had had a receiver appointed to take over Duncan's taxicab business, and he was very anxious to have the receivership dismissed.

After the negotiations had been carried on over a period of approximately three weeks, the judgment creditors' counsel offered to satisfy their judgment upon payment of $28,000 and costs of $72.70.

The problem then confronting the tort-feasors and their respective insurers was how to raise this amount of money. The total insurance coverage (after the payment of $1,850 in settlement of the Kusah suit) was $6,000 less than the necessary $28,000. After some discussion between counsel, the Preferred Casualty Association agreed to pay $10,000 plus half the costs, and Fidelity and Casualty Company agreed to pay $15,150 plus half the costs. Duncan then

agreed to produce $2,850 to make up the balance needed to consummate the settlement.

Shortly before the time for taking an appeal was to expire, counsel for the two tort-feasors, using the funds thus supplied, paid the sum of $28,000 plus $72.70 costs into the registry of the court. Thereupon, the judgment creditors' counsel satisfied the $31,150 judgments as having been fully paid, thus extinguishing the liability of all tort-feasors.

Approximately two years later, the present suit was instituted by Duncan and his insurer to recover from Patrick J. Judge and Robert Judge the respective amounts which each had contributed to settle the judgments in the first tort case.

The pleadings present no material issues of fact except that respondents' affirmative defense alleged that the settlement constituted an accord and satisfaction between the defendants in the first tort case, and that appellants were estopped to maintain this action because the Judges had waived their right of appeal in that action in reliance on the settlement.

At the close of the trial of the present case, the court rendered an oral opinion holding that appellants' action should be dismissed for two reasons:

1. Duncan and Judge had each been found by the jury in the first tort case to have been guilty of active negligence which was the proximate cause of the injuries sustained by the three taxicab passengers as a result of the collision.

2. The settlement made with the judgment creditors constituted an accord and satisfaction between the two tort-feasors, to wit, Duncan (and his insurer) and Judge (and his insurer), which barred any action by one against the other.

■ Appellants' assignments of error are directed principally to the action of the trial court in making certain findings of fact and conclusions of law and refusing to make others proposed by appellants. We need not discuss these assignments in detail because there was no conflict in the evidence. *Miller v. Heyes,* 17 Wn. (2d) 467, 136 P. (2d)

157. The evidence relating to the trial court's first reason for dismissing the action was not in conflict, since it consisted only of copies of court records in the tort litigation. We are in as good a position to determine the legal effect of these documents as was the trial court.

We, therefore, turn to a consideration of the legal questions involved in this case.

It is the general common-law rule that there is no right of indemnity between joint tort-feasors. Appellants do not dispute the existence of this rule but contend that this case comes within three of the several exceptions to the rule which have been recognized by the courts of this country. These exceptions are discussed in 42 C. J. S. 608, Indemnity, § 27.

Appellants argue that the general rule of nonindemnity does not apply here because:

"1. Duncan was not *in pari delicto* with Judge; he was less culpable than Judge, although both were liable to the passengers.

"2. Duncan, though at fault to the passengers, was not in the same fault as to Judge, and the fault of Judge was the primary and efficient cause of the injury.

"3. The judgment of the passengers against both tort-feasors resulted from the violation of a duty owed by Judge to Duncan, and Duncan was without fault as to Judge."

In weighing the validity of these reasons, we must examine the instructions given to the jury in the first tort action. They are too voluminous to set forth here, and we will refer to them only to the extent necessary to an understanding of the issues upon which the jury was called to pass in arriving at its verdict.

The court instructed the jurors that Patrick J. Judge was liable in damages to the passengers in Duncan's taxicab and told them to assess the damages for their injuries.

Another instruction permitted the jury to find that the drivers were *both* guilty of negligence which was a proximate cause of the accident and, in that event, to return a verdict against all defendants.

The jury was also instructed that Duncan and his driver

were bound to exercise the highest degree of care consistent with the practical operation of the taxicab.

The jury was further instructed, in effect, that Duncan and his driver would not be liable if it found that the sole proximate cause of the accident was the sudden emergence of the Judge automobile into the arterial street.

Appropriate instructions were given regarding the duty of the taxicab driver as to speed, the use of his brakes, and keeping a lookout for other traffic, and the effect of any failure of the driver in these respects if found to be a proximate cause of the accident.

The court also submitted to the jury the issue as to whether the taxicab driver had a last clear chance to avoid the accident.

The last instruction on the issue of liability (No. 25) reads:

"You are instructed that the defendants Kusah and Judge at all times had the duty imposed upon them to do all things reasonably necessary that they could do in the exercise of care to avoid a collision by the use of brakes, or in slowing their automobiles, if feasible, by swerving their automobiles, if feasible, or in any other reasonably feasible method regardless of their respective rights of way.

"Therefore, if you find by a preponderance of the evidence that the collision here involved was a proximate result of the failure of both defendant Kusah and defendant Judge to use that degree of care which careful and prudent drivers, driving different automobiles respectively, would have used under like and similar circumstances to avoid the collision, then you must find in favor of the plaintiffs and against all of the defendants.

"However, if you should find by a preponderance of the evidence that Kusah, the driver of the taxicab, by the exercise of the highest degree of care, did not see that Judge did not stop, and did not, by the exercise of the highest degree of care, know that Judge was not going to yield him the right of way, and you further find that Kusah was not guilty of using excessive speed that was one of the contributing and proximate causes of the collision, and you further find that the driver of the taxicab under such circumstances could not avoid being hit by Judge, then you cannot find against the defendants Duncan and Kusah."

What was said in *Seattle v. Peterson & Co.,* 99 Wash. 533, 170 Pac. 140, under similar circumstances is applicable here.

"Whether these instructions were right or wrong need not now be inquired into. They became the law of the case and the parties are bound by them. Under these instructions a verdict was rendered against the city which established its liability under the independent act of negligence alleged against it. The judgment entered upon that verdict is conclusive upon that point and is now *res adjudicata.* The case in this regard is controlled by *Puyallup v. Vergowe,* 95 Wash. 320, 163 Pac. 779. If the verdict in the *Abrams* case [60 Wash. 356] could be construed as a finding that both the city and the contractor were negligent, the result would be the same. The concurring negligence of the contractor would be immaterial and would not absolve the city from its liability nor permit it to fasten the burden of the verdict upon the contractor, there being no contribution between joint tort feasors. *Tacoma v. Bonnell,* 65 Wash. 505, 118 Pac. 642, Ann. Cas. 1913B 934, 36 L. R. A. (N.S.) 582."

The instructions in the first tort case, considered together, presented to the jury the issue whether the taxicab driver was negligent in any of the respects mentioned therein and, if so, whether such negligence was a proximate cause of the accident. Since the court told the jury that Patrick J. Judge was liable as a matter of law, the verdict against Duncan, his driver, and Judge could only mean that the jury found that both drivers were guilty of negligence which was a proximate cause of the accident.

Appellants argue that this conclusion cannot be correct because the same jury returned a verdict in the second tort case awarding Duncan damages against the Judges for damage to the taxicab resulting from the same collision. The verdicts in the two cases may be inconsistent, but we are here concerned only with the first tort case, because the indemnity sought by appellants is confined to the amounts expended in settlement and satisfaction of the judgment rendered in that case in favor of the three taxicab passengers.

It is appellants' contention that Duncan owed a higher duty of care to his passengers than Judge did; and

that, therefore, Duncan's negligence was of a different type than Judge's negligence, the latter's negligence being the primary and efficient cause of the accident. The court instructed the jury as to the high degree of care owed by Duncan to his passengers, but, nevertheless, under instruction No. 25 (above quoted) it was possible for the jury to find that *both* Duncan and Judge were guilty of active negligence which jointly caused the accident. It must be presumed that there was substantial evidence from which the jury could have so found. We hold that the jury by its verdict in the first tort action found both Duncan and Judge guilty of such negligence.

This interpretation of the verdict compels the conclusion that the judgment in the first tort case is *res judicata* of the fact that Duncan and Judge were joint tort-feasors, and that the active negligence of each was a proximate cause of the collision. They were *in pari delicto,* and therefore, neither is entitled to indemnity from the other.

In support of their position, appellants invite our attention to the decision of the Texas supreme court in *Wheeler v. Glazer,* 137 Tex. 341, 153 S. W. (2d) 449, 140 A. L. R. 1301, where a passenger on a street car had been injured in a collision between the street car and a truck in a street intersection. The passenger sued both parties, but the jury found the truck driver's negligence was the proximate cause of the accident and exonerated the street railway from liability. The owner of the truck appealed from a judgment entered against him, claiming that the trial court had erred in refusing to give his requested instruction that the street car company was required to exercise a very high degree of care for the protection of its passengers. The supreme court held that a certain Texas statute relating to contribution was not available to the truck owner, because he had violated a duty which he owed to the other tort-feasor, thereby causing the injury to the passenger on the street car. Referring to the difference in the duty owing to the passengers by the two tort-feasors, the court said:

"In the case at bar the street car company, as between it and its passengers, was required to exercise a very high

degree of care for the protection of the passengers, but as between the street car company and Glazer, the former owed no greater duty to protect Mrs. Wheeler than did the latter. The street car company exercised ordinary care for her protection, but Glazer failed so to do. Glazer's negligence was therefore of a different quality from that of the street car company.

"Furthermore, the street car company had equal rights with Glazer at the street intersection. The street car company exercised ordinay care to avoid the collision with Glazer, but Glazer negligently violated the street car company's rights, and thereby brought about the collision. Glazer was a wrongdoer as to the street car company, but the street car company was not a wrongdoer as to Glazer. Where the injury forming the basis for the judgment against the joint tort-feasors results from a violation of a duty which one of the tort-feasors owes to the other, the latter, at a common law, is entitled to contributions or indemnity from the former 16 C. J. S., 16; 13 Amer. Jur., p. 38, sec. 39; *Alabama Power Co. v. Curry*, 228 Ala. 444, 153 So. 634; *Seaboard Air Line Ry. Co. v. American District Electric Protective Co.*, 106 Fla. 330, 143 So. 316. Under these circumstances, we think that, even if the street car company had been required to pay the judgment in favor of Mrs. Wheeler, or any part thereof, by reason of its failure to exercise a very high degree of care for her protection, yet it would have been entitled at common law to have complete indemnity fom Glazer. Consequently the statute above referred to is not applicable."

In the Texas case, the jury exonerated the street car company from liability for the accident. In the first tort action with which we are concerned, the jury found *both* tort-feasors legally responsible for the injuries sustained by the taxicab passengers. Whatever difference existed in the duties respectively owed to the passengers by each tort-feasor, nevertheless the jury by its verdict must have found that the accident was proximately caused by the concurrent negligence of both of them. We think that the cited case is distinguishable from the case at bar in that respect. In any event, we are not persuaded that appellants come within any of the exceptions to the general rule that there is no right of indemnity between joint tort-feasors.

Reliance is placed upon our decision in *Alaska S. S. Co. v. Pacific Coast Gypsum Co.*, 71 Wash. 359, 128 Pac. 654. In that case, the injuries sustained by the workmen were caused by a breach of contract between their employer and the shipper whereby the latter was obligated to furnish a safe hoisting appliance. It failed to do so, and the steamship company's employees were injured as a result. The decision rested upon the contractual relations between the tortfeasors, and its language must be read in that light. In the first tort case, no contract existed between the two tortfeasors, and their obligations *inter se* are governed by the general common-law rule regarding indemnity above refered to.

The right of appellants to maintain this action is dependent on the correct interpretation of the verdict and judgment in the first tort action. The second tort action has no bearing upon our problem. As above indicated, we are of the opinion that the judgment in the first tort action is *res judicata* of the fact that the injuries sustained by the taxicab passengers were proximately caused by the concurrent, active negligence of Duncan's taxicab driver and Patrick J. Judge. Therefore, Duncan and Judge are joint tort-feasors *in pari delicto*, and each is barred from recovering indemnity from the other.

In view of the conclusion we have reached regarding the lack of a legal basis for appellants' alleged causes of action, it is not necessary to consider respondents' affirmative defense of accord and satisfaction.

The trial court's judgment dismissing appellants' complaint was correct, and it is hereby affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.